# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| GARY HUGHES et al., | |
| Plaintiffs, | No. 14-CV-111-LRR |
| vs. | **ORDER** |
| CITY OF CEDAR RAPIDS, IOWA & GATSO USA, INC., | |
| Defendants. | |

_____

## *TABLE OF CONTENTS*

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.     PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.    SUBJECT MATTER JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . 3

IV.     STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

V.      FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.   Traffic Camera System. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    B.   Plaintiffs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        1.   Gary Hughes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        2.   Arash Yarpezeshkan, Edward G. Robinson and James Louis
             Sparks. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        3.   Krisanne M. Duhaime and Gerald Reid Duhaime. . . . . . . . . 8
        4.   David Mazgaj. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        5.   Susan M. Dumbaugh. . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        6.   Jerry Northrup. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        7.   Daniel Ray French and Jeffrey V. Stimpson. . . . . . . . . . . 9
        8.   Roger L. Lee. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

VI.     ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A.   Standing of Gary Hughes, David Mazgaj and Roger L. Lee. . . . . . . . 9
        1.   Parties' arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        2.   Applicable law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          3.      *Application.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*
               a.    *Gary Hughes.* . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*
               b.    *David Mazgaj.* . . . . . . . . . . . . . . . . . . . . . . . . . . *13*
               c.    *Roger L. Lee.* . . . . . . . . . . . . . . . . . . . . . . . . . . . *15*

**B.**    **Procedural Due Process Claim Standing.** . . . . . . . . . . . . . . . . . . *16*
          **1.**    **Parties' arguments** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**
          **2.**    **Applicable law.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**
          **3.**    **Analysis.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **19**

**C.**    **Mootness of Susan M. Dumbaugh's Claims.** . . . . . . . . . . . . . . . *21*
**D.**    **Failure to State a Claim for Which Relief Can Be Granted.** . . . . . . *22*
          **1.**    **Waiver.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **23**
               a.    *Parties' arguments.* . . . . . . . . . . . . . . . . . . . . . . . . *23*
               b.    *Applicable law.* . . . . . . . . . . . . . . . . . . . . . . . . . . *23*
               c.    *Analysis.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *24*
          **2.**    **Substantive due process.** . . . . . . . . . . . . . . . . . . . . . . . . **25**
               a.    *Parties' arguments.* . . . . . . . . . . . . . . . . . . . . . . . . *25*
               b.    *Applicable law.* . . . . . . . . . . . . . . . . . . . . . . . . . . *26*
               c.    *Analysis.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *28*
          **3.**    **Equal protection.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **31**
               a.    *Parties' arguments.* . . . . . . . . . . . . . . . . . . . . . . . . *31*
               b.    *Applicable law.* . . . . . . . . . . . . . . . . . . . . . . . . . . *31*
               c.    *Analysis.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *32*
          **4.**    **Privileges and immunities.** . . . . . . . . . . . . . . . . . . . . . . . **34**
               a.    *Parties' arguments.* . . . . . . . . . . . . . . . . . . . . . . . . *34*
               b.    *Applicable law.* . . . . . . . . . . . . . . . . . . . . . . . . . . *35*
               c.    *Analysis.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *36*
          **5.**    **Department of Transportation rules.** . . . . . . . . . . . . . . . . . **38**
               a.    *Parties' arguments.* . . . . . . . . . . . . . . . . . . . . . . . . *38*
               b.    *Applicable law.* . . . . . . . . . . . . . . . . . . . . . . . . . . *38*
               c.    *Analysis.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *39*
          **6.**    **Unjust enrichment.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **42**

**E.**    **Plaintiffs' Remaining Claims.** . . . . . . . . . . . . . . . . . . . . . . . . *43*

**VII.**    **CONCLUSION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *45*

# I. INTRODUCTION

The matter before the court is Defendants City of Cedar Rapids, Iowa and Gatso USA, Inc.'s (collectively, "Defendants") "Motion to Dismiss Second Amended Complaint" ("Motion to Dismiss") (docket no. 19).

# II. PROCEDURAL HISTORY

On September 2, 2014, Plaintiffs filed a Class Action Petition in the Iowa District Court for Linn County, Iowa, Case No. EQCV081602. Class Action Petition (docket no. 2-2). On October 3, 2014, Defendants removed the case to this court on the basis of federal question jurisdiction. *See* Joint Notice of Removal (docket no. 2). On December 17, 2014, Plaintiffs filed a Second Amended Complaint (docket no. 18). On January 5, 2015, Defendants filed the Motion to Dismiss. On February 2, 2015, Plaintiffs filed a Resistance (docket no. 28). On February 12, 2015, Defendants filed a Reply (docket no. 29). Neither party requests oral argument on the Motion to Dismiss, and the court finds that oral argument is unnecessary. The Motion to Dismiss is fully submitted and ready for decision.

# III. SUBJECT MATTER JURISDICTION

The court has federal question jurisdiction over Plaintiffs' claims because they arise under the United States Constitution. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

The court has supplemental jurisdiction over Plaintiffs' state-law claims because they are so related to the claims over which the court has federal question jurisdiction that they form part of the same case or controversy.[1] *See* 28 U.S.C. § 1367(a) ("[T]he district

---

[1] Because Defendants contest whether the court has subject matter jurisdiction over some of the Plaintiffs' claims, the court shall describe its exercise of supplemental jurisdiction more fully below.

courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . .").

## IV.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal on the basis of "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1); *see also Cmty. Fin. Grp., Inc. v. Republic of Kenya*, 663 F.3d 977, 979 (8th Cir. 2011). "To establish constitutional standing, the 'person invoking the power of a federal court must' 'prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision.'" *Hutterville Hutterian Brethren, Inc. v. Sveen*, ___ F.3d ___, ___, 2015 WL 149307 at *6 (8th Cir. 2015) (quoting *Hollingsworth v. Perry*, 570 U.S. ___, ___, 133 S. Ct. 2652, 2661 (2013)).

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal on the basis of "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord B & B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 387 (8th Cir. 2009). A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Although a plaintiff need not provide "detailed" facts in support of his or her allegations, the "short and plain statement" requirement of Federal Rule of Civil Procedure

8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary [under Rule 8(a)(2)]."). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Where the allegations show on the face of the complaint [that] there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997)).

## V. FACTUAL BACKGROUND

Viewed in the light most favorable to Plaintiffs, the facts are as follows:

### A. Traffic Camera System

In 2011, Defendant City of Cedar Rapids, Iowa ("City") implemented an Automated Traffic Enforcement ("ATE") system pursuant to the Cedar Rapids Code of Ordinances. *See* Cedar Rapids, Iowa Code of Ordinances § 61.138. The City contracted with Defendant Gatso USA, Inc. ("Gatso") to assist the city in installing and operating the ATE system.

Under the ATE system, a camera captures an image of a vehicle either failing to stop at a red light or traveling faster than the posted speed limit. The City then mails a "Notice of Violation" to the registered owner of the vehicle, as required by the Cedar Rapids Code of Ordinances. *See id.* § 61.138(d)(1). A Notice of Violation informs the registered owner of the vehicle of the violation. *See, e.g.*, Notice of Violation (docket no. 19-2) at 4. The Notice of Violation informs the registered owner of the vehicle that he or she may either waive the right to a hearing by paying the civil penalty or contest the violation. *See id.* at 5.

The Notice of Violation states that a vehicle owner who is a resident of the state of Iowa may contest the violation in person at an administrative hearing. *See id.* A non-resident may contest the violation by filling out a form found at www.viewviolation.com and mailing it to a violation processing center in New York. *See id.* The Notice of Violation also states that the vehicle's owner "may view the city ordinance at . . . http://www.cedar-rapids.org." *Id.*

The ordinance provides that a person charged with an automated traffic citation may challenge such citation in two ways:

> 1. By submitting in a form specified by the City a request for an administrative hearing to be held at the Cedar Rapids Police Department before an administrative appeals board (the "Board") consisting of one or more impartial fact finders. Such a request must be filed within 30 days from the date on which Notice of the violation is sent to the Vehicle Owner. After a hearing, the Board may either uphold or dismiss the Automated Traffic Citation, and shall mail its written decision within 10 days after the hearing, to the address provided on the request for hearing. If the citation is upheld, then the Board shall include in its written decision a date by which the fine must be paid, and on or before that date, the Vehicle Owner shall either pay the fine or submit a request pursuant to the next paragraph, (e.)(2.).

> 2. By submitting in a form specified by the City a request that in lieu of the Automated Traffic Citation, a municipal infraction citation be issued and filed with the Small Claims Division of the Iowa District Court in Linn County. Such a request must be filed within 30 days from the date on which Notice of the violation is sent to the Vehicle Owner. Such a request will result in a court order requiring the Vehicle Owner to file an answer and appearance with the Clerk of Court, as well as setting the matter for trial before a judge or magistrate. If the Court finds the Vehicle Owner guilty of the municipal infraction, state mandated court costs will be added to the amount of the fine imposed by this section.

Cedar Rapids, Iowa Code of Ordinances § 61.138(e). If a vehicle owner elects to have an administrative hearing and loses at such hearing, the City sends a second notice called a Notice of Determination. In such notice, the City states that the recipient of the Notice of Determination "may elect to resolve this Notice of Determination . . . by paying the assessed fine or by appealing to the Small Claims Division of the Iowa District Court in Linn County." *See* Notice of Determination (docket no. 19-2) at 10. The City also sends a Notice of Determination when a vehicle owner does not respond to the Notice of Violation within thirty days.

If the vehicle owner elects to proceed in the Small Claims Division of the Iowa District Court for Linn County and loses, he or she may "appeal [to the district court] from a judgment . . . by giving oral notice to the court at the conclusion of the hearing, or by filing a written notice of appeal." Iowa Code § 631.13. If the vehicle owner loses at the district court level, the vehicle owner may appeal to the Iowa Supreme Court. *See* Iowa R. Civ. P. 6.101. Violators of the Ordinance are subject to a civil fine between $25 (traveling one to five miles per hour above the speed limit) and $750 (traveling over thirty miles per hour above the speed limit in a construction zone). *See* Cedar Rapids, Iowa Code of Ordinances § 61.138(d); *see also* Notices of Violation and Notices of Determination (docket no. 19-2) at 4-51 (listing the fines levied against all named Plaintiffs). A person who violates the Ordinance does not risk losing his or her driver's license. *See generally* City of Cedar Rapids, Iowa Code of Ordinances § 61.138.

### B. Plaintiffs

Plaintiffs include both residents and non-residents of Iowa. Plaintiffs are also at various stages in the ATE system process as follows:

#### 1. Gary Hughes

Plaintiff Gary Hughes is a resident of Iowa. Hughes brings this claim because "he believes that he . . . rightfully ha[s] fear that, as a [v]ehicle [o]wner regularly using the

roads in Cedar Rapids, [he] may be subject to . . . civil liability resulting from the operation of the City's . . . ATE system." Second Amended Complaint ¶ 2.a. He is "a regular traveler on the City's public streets and highways . . . [but] has not yet received a civil penalty under the ATE ordinance." *Id.*

### 2. *Arash Yarpezeshkan, Edward G. Robinson and James Louis Sparks*

Plaintiffs Arash Yarpezeshkan, Edward G. Robinson and James Louis Sparks are all residents of Iowa. Yarpezeshkan, Robinson and Sparks all received Notices of Determination. *See id.* ¶¶ 1.a.; 2.b; 2.c. Yarpezeshkan, Robinson and Sparks all paid the fines contained in the Notices of Determination.

### 3. *Krisanne M. Duhaime and Gerald Reid Duhaime*

Plaintiffs Krisanne M. Duhaime and Gerald Reid Duhaime are married and are residents of Iowa. They received a Notice of Violation and traveled to Cedar Rapids and appeared for an administrative hearing. The administrative appeal board found the Duhaimes liable. The record is unclear as to whether the Duhaimes challenged this determination in the Iowa District Court in Linn County.

### 4. *David Mazgaj*

Plaintiff David Mazgaj is a resident of Iowa. Mazgaj received a Notice of Determination. Mazgaj appeared for an administrative hearing, at which the administrative appeal board found him liable. Mazgaj paid the fine.

### 5. *Susan M. Dumbaugh*

Plaintiff Susan M. Dumbaugh is a resident of Iowa. Dumbaugh received a Notice of Violation. Dumbaugh appeared for an administrative hearing. At the hearing, the administrative appeal board found Dumbaugh liable. The Cedar Rapids Police Department subsequently sent Dumbaugh a letter "dismissing the citation" and finding that Dumbaugh had "no liability for the citation." December 9, 2014 Letter (docket no. 19-2) at 52.

### 6.    Jerry Northrup

Plaintiff Jerry Northrup is a resident of Florida.  Northrup received a Notice of Violation.  Northrup paid the fine.

### 7.    Daniel Ray French and Jeffrey V. Stimpson

Plaintiff Daniel Ray French is a resident of Minnesota.  Plaintiff Jeffrey V. Stimpson is a resident of West Virginia.  French and Stimpson both received Notices of Determination.  French and Stimpson paid the fine.

### 8.    Roger L. Lee

Plaintiff Roger L. Lee is a resident of Minnesota.  Lee received a Notice of Violation.  Lee appeared telephonically for an administrative hearing to challenge the Notice of Violation.  The administrative appeal board found Lee liable and issued him a Notice of Determination.  "Lee requested a Municipal Infraction be filed in the Iowa District Court for Linn County, Small Claims Division."  Brief in Support of the Motion (docket no. 19-1) at 12.  This action is still pending.  *See id.*

## VI.  ANALYSIS

In the Motion to Dismiss, Defendants argue that: (1) Plaintiffs Gary Hughes, David Mazgaj and Roger Lee lack standing to bring any claim; (2) all Plaintiffs lack standing to bring a due process claim; (3) Plaintiff Susan M. Dumbaugh's claim is moot; and (4) all Plaintiffs fail to state claims on which relief can be granted.  *See* Brief in Support of the Motion at 7-8.

### A.   Standing of Gary Hughes, David Mazgaj and Roger L. Lee

### 1.    Parties' arguments

Defendants argue that: (1) Gary Hughes lacks standing because he "has not suffered a 'concrete and particularized' injury sufficient to establish standing"; (2) David Mazgaj lacks standing because "he has not suffered any injury in fact"; and (3) Roger L. Lee lacks standing because he "is currently contesting his citation before the Iowa small claims

court" and, therefore, "his claims are not ripe for adjudication." Brief in Support of the Motion at 9, 11, 13. Plaintiffs Gary Hughes, David Mazgaj and Roger L. Lee argue that they have standing to pursue their claims.

### 2. *Applicable law*

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.' U.S. Const., Art. III, § 2. The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Susan B. Anthony List v. Driehaus*, ___ U.S. ___, ___, 134 S. Ct. 2334, 2341 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) (alteration in original). "[F]or a federal court to have authority under the Constitution to settle a dispute, the party before it must seek a remedy for a personal and tangible harm." *Hollingsworth*, 133 S. Ct. at 2661. "To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List* 134 S. Ct. at 2341 (2014) (quoting *Defenders of Wildlife*, 504 U.S. at 560-61) (alteration in original).

### 3. *Application*

#### a. *Gary Hughes*

The court finds that Gary Hughes does not have standing under Article III. Specifically, Gary Hughes has not alleged that he has suffered an injury in fact.

At the pleading stage, a plaintiff must allege an injury in fact to help "ensure that the plaintiff has a 'personal stake in the outcome of the controversy.'" *Susan B. Anthony List*, 134 S. Ct. at 2341. As the Supreme Court explains:

> An injury sufficient to satisfy Article III must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." An allegation of future injury may suffice if the threatened injury is "certainly impending," or there is a "substantial risk that the harm will occur."

10

*Id.* (internal citations and quotations omitted). When a person is subject to the threatened enforcement of a law, "an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Id.* at 2342. Rather, the person subject to threatened enforcement of a law may challenge such law "under circumstances that render the threatened enforcement sufficiently imminent." *Id.* To qualify as sufficiently imminent, the plaintiff must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Id.* (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979) (internal quotation marks omitted)); *see also Gray v. City of Valley Park*, 567 F.3d 976, 984 (8th Cir. 2009) ("Plaintiffs have standing to challenge the facial validity of a regulation notwithstanding the pre-enforcement nature of a lawsuit, where the impact of the regulation is direct and immediate and they allege an actual, well-founded fear that the law will be enforced against them.").

Gary Hughes has not alleged that he intends "to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute." *Susan B. Anthony List*, 134 S. Ct. at 2342. In fact, he admits that he "has not yet received a citation . . . , and does not have any direct intention to violate the [ordinance]." Resistance at 15. While Gary Hughes is correct that "[t]he Supreme Court has on several occasions found that a 'substantial risk that harm will occur' is sufficient to support standing," *id.* at 16, it has done so when the substantial risk that harm will occur "may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm." *Clapper v. Amnesty Int'l USA*, ___ U.S. ___, ___, 133 S. Ct. 1138, 1150 n.5 (2013). Here, Gary Hughes has not alleged that he will somehow incur costs to mitigate or avoid any harm resulting from the ATE system. Rather, Gary Hughes is "raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits

11

him than it does the public at large." *Hollingsworth*, 133 S. Ct. at 2662 (quoting *Defenders of Wildlife*, 504 U.S. at 573-74 (internal quotation marks omitted)). Such a claim "does not state an Article III case or controversy." *Id.*

In addition, the court finds that Gary Hughes does not have standing to pursue his claims under an Iowa rule that allows Iowa courts to render declaratory judgments. Gary Hughes urges the court to find Article III standing based on Iowa Rule of Civil Procedure 1.1101, which provides that:

> Courts of record within their respective jurisdictions shall declare rights, status, and other legal relations whether or not further relief is or could be claimed. It shall be no objection that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form or effect, and such declarations shall have the force and effect of a final decree. The existence of another remedy does not preclude a judgment for declaratory relief in cases where it is appropriate.

Iowa R. Civ. P. 1.1101. That Iowa provides a mechanism for a party to seek a declaratory judgment does not affect the court's analysis as to Gary Hughes's Article III standing. "State courts may afford litigants standing to appear where federal courts would not, but whether they do has no bearing on the parties' Article III standing in federal court." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 934 (8th Cir. 2012) (quoting *Perry v. Brown*, 671 F.3d 1052, 1074 (9th Cir. 2012) (vacated and remanded on other grounds by *Hollingsworth*, 133 S. Ct. at 2668)); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985) ("Standing to sue in any Article III court is, of course, a federal question which does not depend on the party's . . . standing in state court."); *David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013) (holding that a plaintiff must show both statutory standing and constitutional standing). Assuming, for purposes of the Motion, that Gary Hughes is able to show that he has standing in state court, Gary Hughes's claim still fails because he is unable to establish constitutional standing under

Article III.[2]  Accordingly, the court shall grant the Motion to Dismiss to the extent it argues that Gary Hughes lacks standing to bring any claim.[3]

### b.     *David Mazgaj*

The court finds that David Mazgaj does not have standing under Article III—that is, the court does not have original jurisdiction over David Mazgaj's claims.  David Mazgaj did not receive any Notice that he violated the ordinance.  Rather, he alleges that he was driving a vehicle owned by his wife and his wife received a Notice.  *See* Second

---

[2] Even if Gary Hughes was not required to show both statutory standing and Article III standing, his claim would still fail because he cannot establish statutory standing. While Iowa Rule of Civil Procedure 1.1101 permits Iowa courts to adjudicate declaratory actions, "a justiciable controversy must exist" and Iowa courts "will not decide an abstract question simply because litigants desire a decision on a point of law or fact." *Bechtel v. City of Des Moines*, 225 N.W.2d 326, 330 (Iowa 1975).  For a controversy to be justiciable, the parties must have "adverse legal interests of sufficient immediacy and reality to warrant a declaratory judgment." *Id.* (quoting *Katz Investment Co. v. Lynch*, 47 N.W.2d 800, 805 (Iowa 1951)).  A plaintiff must plead sufficient facts "to show that the issue is concrete and that particular legal rights and powers will be or are affected. Otherwise, the court would be justified in dismissing the petition as merely advisory in character." *Id.* at 331.  Here, Gary Hughes has not pled sufficient facts to render the court's opinion as to his claim as anything but advisory.  Rather, he alleges only that, as "a regular traveler on the City's public streets and highways that are affected by the ATE ordinance," "he believes that he . . . may be subject to the arbitrary and capricious prosecution" of the ordinance, despite not having received a civil penalty under the ordinance.  Second Amended Complaint at 3-4.  These allegations do not create a justiciable controversy. *See Bechtel*, 225 N.W.2d at 332 ("[S]ince [courts] may not render declaratory judgments where the parties merely fear or apprehend that a controversy may arise in the future, the courts generally will not declare the rights of parties upon a state of facts which has not arisen and may never arise." (quoting 22 Am. Jur. 2d Declaratory Judgments § 18 at 861)).

[3] The court notes that despite the decision to dismiss Gary Hughes from the case, Gary Hughes could still obtain the declaratory relief he seeks.  Because some of the parties in the case are able to establish Article III standing, the court will ultimately decide whether the ATE system is constitutional.  Such a decision provides Gary Hughes with the declaration he seeks.

Amended Complaint at 2-3. David Mazgaj states that he "is not intending to assert third-party standing on behalf of his wife, but rather, [to] assert direct standing on his own behalf." Resistance at 18. David Mazgaj's claims fail for the same reasons Gary Hughes's claims fail—David Mazgaj is "raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large." *Hollingsworth*, 133 S. Ct. at 2662 (quoting *Lujan*, 504 U.S. at 573-74) (internal quotation marks omitted). Such a claim "does not state an Article III case or controversy." *Id.*

Despite stating that David Mazgaj does not assert third-party standing on behalf of his wife, David Mazgaj still argues that he "clearly meets the requirements of the limited exception to [third-party] standing." Resistance at 19. A "plaintiff generally must assert his [or her] own legal rights and interests, and cannot rest his [or her] claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Despite this general absence of third-party standing, "there may be circumstances where it is necessary to grant a third party standing to assert the rights of another." *Kowalski v. Tesmer*, 543 U.S. 125, 129-30 (2004). One such exception is the close relationship exception, in which the proponent of third-party standing must show that he or she "has a 'close' relationship with the person who possesses the right" and that "there is a 'hindrance' to the possessor's ability to protect his [or her] own interests." *Id.* at 130; *see also Singleton v. Wulff*, 428 U.S. 106, 116 (1976) ("If there is some genuine obstacle to such assertion, however, the third party's absence from court loses its tendency to suggest that his right is not truly at stake, or truly important to him, and the party who is in court becomes by default the right's best available proponent."). Here, David Mazgaj fails to show that his wife has some hindrance that prevents her from protecting her own interests. If she believes that she has suffered a constitutional injury, nothing prevents her from suing

on her own behalf and, therefore, David Mazgaj is not "the right's best available proponent." *Singleton*, 428 U.S. at 116. The fact that David Mazgaj's wife is not personally familiar with the facts giving rise to the Notice in no way hinders her ability to sue on her own behalf. Accordingly, the court shall grant the Motion to Dismiss to the extent it argues that David Mazgaj lacks standing to bring any claim.

### c.    *Roger L. Lee*

The court finds that Roger L. Lee's claims are ripe for adjudication.[4] "[T]he ripeness inquiry requires the examination of both 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Pub. Water Supply Dist. No. 10 v. City of Peculiar*, 345 F.3d 570, 572-73 (8th Cir. 2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). The party seeking to have a claim adjudicated "must necessarily satisfy both prongs to at least a minimal degree." *Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1039 (8th Cir. 2000). "Whether a case is 'fit' depends on whether it would benefit from further factual development." *Pub. Water Supply*, 345 F.3d at 573. To establish hardship, a plaintiff must allege that he or she "has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged statute or official conduct." *Id.*

Here, Roger L. Lee's claims meet both prongs. Roger L. Lee's claim is fit for judicial decision because no additional factual development would benefit the case—the Small Claims Division of the Iowa District Court for Linn County found Roger Lee guilty of violating the ordinance and he "posted the bond of $125 and paid the cost of appeal of $185 . . . to dispute his $75 ticket." Resistance at 19. No further factual development is necessary to determine whether the ATE system is constitutional. Additionally, Roger L.

---

[4] The court notes that the ripeness inquiry is technically distinct from the traditional standing inquiry, though both standing and ripeness are components that determine whether a case is justiciable.

15

Lee has established hardship because he has sustained a direct injury resulting from the challenged ATE system by receiving a ticket and incurring the cost of litigating such ticket. *See Pub. Water Supply*, 345 F.3d at 573. Accordingly, the court shall deny the Motion to Dismiss to the extent it argues that Roger L. Lee's claims are not ripe for adjudication.

### B. Procedural Due Process Claim Standing

#### 1. Parties' arguments

Defendants argue that Plaintiffs lack standing to bring procedural due process claims because they "cannot establish the causation element necessary for Article III standing." Brief in Support of the Motion at 13. Defendants contend that "Plaintiffs have chosen not to fully participate in the process of which they complain." *Id.*

Plaintiffs argue that each plaintiff has standing to pursue procedural due process claims because they "have alleged a variety of confusing information contained in the Notices of Violation." Resistance at 23. Plaintiffs also contend that they have standing because the ordinance "is implemented in direct contravention of Iowa's state law due process requirements" because the ATE system cameras "are placed and are operated in violation of their due process rights, as defined by administrative rules promulgated by the Transportation Commission." *Id.* at 30, 32. That is, Plaintiffs argue that the Iowa Department of Transportation's rules provide the minimum procedural due process for any ATE system.

#### 2. Applicable law

Defendants rely on *Shavitz v. City of High Point*, 270 F. Supp. 2d 702 (M.D.N.C 2003), for the proposition that "where the plaintiff had fair notice of the process and chose not to participate . . . the plaintiffs do not have standing to pursue a [procedural] due process claim." Brief in Support of the Motion at 18. *See Shavitz*, 270 F. Supp. 2d at 711 (holding that when a plaintiff did not "avail[] himself of the process Defendants have provided, [the] [p]laintiff ha[d] not suffered a concrete and particularized injury as a result

of such allegedly deficient process and therefore ha[d] no standing to challenge it"); *Mills v. City of Springfield*, No. 2:10-CV-04036-NKL, 2010 WL 3526208, at *4-6 (W.D. Mo. Sept. 3, 2010) (holding that the "[p]laintiffs cannot challenge on [procedural] due process grounds the procedures they opted not to use"); *accord Van Harken v. City of Chicago*, 906 F. Supp. 1182, 1187 (N.D. Ill. 1995) (holding that plaintiffs who paid their tickets "cannot be heard to complain, because they have waived their opportunity to utilize the review procedures they now challenge").  The Sixth Circuit Court of Appeals appears to agree with the *Shavitz* court's reasoning:

> Yet [the plaintiff] has not yet experienced the procedures she challenges, and so, at first blush, it appears difficult to question the district court's conclusion that [the plaintiff] lacked standing; without having been injured by these procedures, she resembles a mere outsider with a non-justiciable 'general grievance.' *See United States v. Hays*, 515 U.S. 737, 743 (1995) ("[W]e have repeatedly refused to recognize a generalized grievance against allegedly illegal government conduct as sufficient for standing to invoke the federal judicial power."); *Herrada v. City of Detroit*, 275 F.3d 553, 558 (6th Cir. 2001) ("Herrada lacks standing to argue that hearings are not held despite requests by vehicle owners, because she elected to pay the fine rather than request a hearing.").  But this case is more complicated than that.

*Williams v. Redflex Traffic Sys., Inc.*, 582 F.3d 617, 620 (6th Cir. 2009)

However, not all courts agree that if a plaintiff has not participated in the process, then he or she lacks standing to pursue a procedural due process challenge.  *See, e.g.*, *Sevin v. Parish of Jefferson*, 632 F. Supp. 2d 586, 598 (E.D. La. 2008) ("The *Shavitz* court . . . appears to have confused the 'injury in fact' requirement with the separate inquiry, not necessarily related to standing, into whether the plaintiff has stated a valid claim for relief.").  The *Sevin* court went on to state that:

> The *Shavitz* court's analysis confuses the standing inquiry with the merits inquiry.  Questions about the proper interpretation

of the Due Process Clause, which the *Shavitz* court treated as part of the "injury in fact" requirement, go to the validity of the plaintiff's claim. But the Supreme Court has never held that a valid legal claim for relief is a necessary prerequisite for standing; indeed, it has consistently treated the two questions separately.

*Id.* (footnote omitted). Despite this apparent disagreement, the court agrees with the *Mills* court that:

Regardless of whether analyzed through the doctrines of standing or waiver of procedural due process claims, "the basic reasoning is the same: Plaintiff has not taken advantage of the procedural processes offered to him, therefore he has not been harmed one way or another by such processes and, accordingly, cannot challenge them on due process grounds."

*Mills*, 2010 WL 3526208, at *5 (quoting *Shavitz*, 270 F. Supp. 2d at 711 n.8).

However, even when a plaintiff has not participated in the process, he or she could still have standing if he or she was effectively prevented from participating in the process due to some defect. *See, e.g.*, *Williams v. Redflex Traffic Sys., Inc.*, 582 F.3d 617, 620-21 (6th Cir. 2009) (holding that when a plaintiff must pay $67.50 to challenge a $50 fine "few rational persons would pay their parking ticket if challenging it was conditioned on paying a non-refundable fee over and above the cost of the ticket" and that a "fee over and above the price of the ticket itself gives [the plaintiff] standing enough to get in the courthouse door"); *Unverferth v. City of Florissant*, 419 S.W.3d 76, 88 (Mo. Ct. App. 2013) ("We reject the notion that [the plaintiff] lacks standing to challenge the Ordinance when [the city] did not provide her with the requisite notice that would have informed her of the procedures through which she could maintain such challenge."); *Smith v. City of St. Louis*, 409 S.W.3d 404, 415 (Mo. Ct. App. 2013) (finding a procedural due process violation when the plaintiff "was not given notice of a meaningful court date because the court date given to her in the Final Notice sent by City was a date that had already passed").

### 3.    *Analysis*

As an initial matter, the court finds that the process, as described by Plaintiffs in their Second Amended Complaint, is not so confusing so as to excuse them from availing themselves of the process. Plaintiffs cite numerous problems with the ATE scheme to justify their non-participation. For example, they state that: (1) the Notice of Violation does not state that one who receives such a Notice has the ability to contest the violation in the Iowa district court; (2) the Notice of Violation erroneously provides language about the assignment of responsibility when the Ordinance has no such provision; (3) Defendants provide only thirty days in which to contest a violation; (4) the Notice of Violation does not adequately provide all possible defenses an alleged violator of the ordinance may present, and it includes defenses not applicable to the Ordinance on a form created for a different jurisdiction; (5) alleged violators are directed to collateral websites which state that failure to pay the ticket will result in loss of driving privileges, the driver may review video evidence of an alleged violation and drivers may pay a fine on a website that does not exist; (6) some plaintiffs received a form directing them to one address, while other plaintiffs received a form directing them to a different address; (7) if an accused violator of the ordinance elects to proceed in Iowa district court, court costs are added to the amount of the fine; (8) it costs money to appeal a magistrate judge's opinion in small claims court; and (9) it is difficult to schedule a court date. *See* Resistance at 21-32. The only item in Plaintiffs' litany of grievances that approaches a reason for preventing a plaintiff from participating in the process is the fees that an alleged violator may be required to pay to contest the fine. *See id.* at 28-29. Plaintiffs rely on *Redflex* for the proposition that the prospect of a fee that is charged in an amount in excess of the fine is really "no choice at all." *Id.* at 28 (quoting *Redflex*, 582 F.3d at 621). However, in *Redflex*, "the citation [the plaintiff] received not only told her that she owed a $50 fine

19

. . . [but also] condition[ed] her right to a hearing on her up front payment of a $67.50 'court processing fee.'" *Redflex*, 582 F.3d at 620.

Here, in contrast, an alleged violator is only charged court costs if he or she loses in small claims court—the right to a hearing is not conditioned on any payment. *See* Cedar Rapids, Iowa Code of Ordinances § 61.138(e)(2) ("By submitting in a form specified by the City a request that in lieu of the Automated Traffic Citation, a municipal infraction citation be issued and filed with the Small Claims Division of the Iowa District Court in Linn County. . . . If the Court finds the Vehicle Owner guilty of the municipal infraction, state mandated court costs will be added to the amount of the fine imposed by this section."). Such costs do not leave an alleged violator with "no choice at all." *Redflex*, 582 F.3d at 621. If an alleged violator wins in Iowa district court, he or she does neither has to pay the fine nor is taxed with court costs.

Plaintiffs Arash Yarpezeshkan, Edward G. Robinson, James Louis Sparks, Jerry Northrup, Daniel Ray French and Jeffrey V. Stimpson all received Notices of Violation and paid the fine without participating in the process at all. Accordingly, whether looked at as an absence of standing or waiver, Arash Yarpezeshkan, Edward G. Robinson, James Louis Sparks, Jerry Northrup, Daniel Ray French and Jeffrey V. Stimpson cannot pursue procedural due process claims. However, Krisanne M. Duhaime, Gerald Reid Duhaime, Susan M. Dumbaugh and Roger L. Lee have all participated in the procedures set up by Defendants to varying degrees. While Defendants argue that Krisanne M. Duhaime, Gerald Reid Duhaime, Susan M. Dumbaugh and Roger L. Lee have not "fully participate[d] in the process of which they complain," Brief in Support of the Motion at 13, each has participated to some degree in the process. Accordingly, Krisanne M. Duhaime, Gerald Reid Duhaime, Susan M. Dumbaugh and Roger L. Lee may all bring claims for a violation of their procedural due process rights. Whether these plaintiffs have

stated a claim for relief for procedural due process violations is discussed more fully in Part VI.D.5.

In short, the court shall grant the Motion to Dismiss to the extent it seeks to prevent Arash Yarpezeshkan, Edward G. Robinson, James Louis Sparks, Jerry Northrup, Daniel Ray French and Jeffrey V. Stimpson from bringing procedural due process claims. The court shall deny the Motion to Dismiss to the extent it seeks to prevent Krisanne M. Duhaime, Gerald Reid Duhaime, Susan M. Dumbaugh and Roger L. Lee from bringing procedural due process claims.

### C. Mootness of Susan M. Dumbaugh's Claims

Defendants argue that Susan M. Dumbaugh's claims are moot because her "Notice of Violation has been dismissed" and, "[t]herefore, she no longer has a personal stake in the outcome of this litigation." Brief in Support of the Motion at 20. Susan M. Dumbaugh argues that her claims are not moot because Defendants cannot "prove that the behavior will not recur." Resistance at 33. Plaintiffs also contend that "there are presumably other unnamed members of the [putative] class that still have a live claim against Defendants" and that "Defendants' actions are certainly capable of repetition, and Ms. Dumbaugh might very well be subject to another Notice of Violation." *Id.* at 34-35.

"A case becomes moot if it can be said with assurance that there is no reasonable expectation that the violation will recur or if interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Doe v. Nixon*, 716 F.3d 1041, 1051 (8th Cir. 2013) (quoting *Kennedy Bldg. Assocs. v. Viacom, Inc.*, 375 F.3d 731, 745 (8th Cir. 2004)) (internal quotation marks omitted); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. The heavy burden of persua[ding] the court that the challenged conduct cannot reasonably be expected to start up again lies with the party

asserting mootness." (quoting *United States v. Concentrated Phosphate Export Ass'n.*, 393 U.S. 199, 203 (1968) (alteration in original)) (internal quotation marks omitted). "When, during the course of litigation, the issues presented in a case lose their life because of the passage of time or a change in circumstances . . . and a federal court can no longer grant effective relief, the case is considered moot." *Ali v. Cangemi*, 419 F.3d 722, 723 (8th Cir. 2005) (en banc) (quoting *Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000)) (internal quotation marks omitted).

Here, despite Susan M. Dumbaugh's violation having been dismissed, Defendants have not met their heavy burden of showing that the court "can no longer grant effective relief." *Id.* Susan M. Dumbaugh has incurred monetary costs by attending the administrative hearing. Besides seeking monetary relief, Susan M. Dumbaugh also seeks declaratory relief. *See* Second Amended Complaint ¶¶ 100-107. Were the court to grant declaratory relief to Susan M. Dumbaugh, she would receive effective relief. Accordingly, the court shall deny the Motion to Dismiss to the extent it seeks to dismiss Susan M. Dumbaugh because her claims have become moot.

### D. Failure to State a Claim for Which Relief Can Be Granted

Defendants argue that Plaintiffs fail to state a claim for which relief can be granted because: (1) Plaintiffs have waived their claims; (2) Plaintiffs fail to state a claim for a substantive due process violation; (3) Plaintiffs fail to state a claim for an equal protection violation; (4) Plaintiffs fail to state a claim for a privileges and immunities violation; (5) alleged violations of Department of Transportation rules do not create a claim for relief; and (6) Plaintiffs fail to state a claim for unjust enrichment. *See* Brief in Support of the Motion at 19-34.

Plaintiffs argue that: (1) Plaintiffs have not waived their claims and waiver is an inappropriate defense to bring in a motion to dismiss; (2) Plaintiffs have stated a claim for a substantive due process violation; (3) Plaintiffs have stated a claim for an equal

protection violation; (4) Plaintiffs have stated a claim for a privileges and immunities violation; (5) alleged violations of Department of Transportation demonstrate Defendants' violation of Plaintiffs' due process rights; and (6) Plaintiffs have stated a claim for unjust enrichment. *See* Resistance at 2.[5]

### 1. Waiver

#### a. Parties' arguments

Defendants argue that "Plaintiffs waived their claims by choosing to not participate in the process and paying their citations." Brief in Support of the Motion at 21. Defendants contend that "[b]y paying the fines without contesting the violations . . . [,] Plaintiffs knowingly, intentionally, and voluntarily waived any claims regarding the ATE violations with which they were cited" and that this fact "is apparent from the face of the . . . Complaint." *Id.* at 23.

Plaintiffs argue that because "[w]aiver is an affirmative defense . . . [,] it is generally inappropriate for Defendants to advance such an argument" at this stage in the proceedings. Resistance at 35. Plaintiffs also argue that they "could by no means be said to have waived all of their constitutional claims . . . , including those for violations of equal protection and privileges and immunities, as well as the unconstitutionality of the Ordinance on its face." *Id.* at 36.

#### b. Applicable law

"[A] right . . . is waived when it is 'intentionally relinquished or abandoned.'" *United States v. Demilia*, 771 F.3d 1051 (8th Cir. 2014) (quoting *United States v. McCoy*,

---

[5] In the Second Amended Complaint, Plaintiffs also allege that the ATE system "violates the Iowa Constitution setting up the Judicial Department (Article V, sections 5 and 8) . . . by providing a different process for prosecutions, and taking jurisdiction for traffic enforcement matters away from the Iowa District Court, the Unified Trial Court, which has 'exclusive, general, and original jurisdiction of all actions,' including civil and criminal matters such as traffic enforcement." Second Amended Complaint ¶ 101. The court shall address this argument below.

496 F.3d 853, 856 (8th Cir. 2007)); *see also Wood v. Milyard*, ___ U.S. ___, ___, 132 S. Ct. 1826, 1832 n.4 (2012) ("A waived claim or defense is one that a party has knowingly and intelligently relinquished . . . ."). Waiver is an affirmative defense. *See* Fed. R. Civ. P. 8(c)(1) (listing waiver as an affirmative defense). "[T]hough it generally must be affirmatively pled and proved, '[i]f an affirmative defense . . . is apparent on the face of the complaint . . . that [defense] can provide the bas[i]s for dismissal under [Federal Rule of Civil Procedure] 12(b)(6).'" *ABF Freight Sys., Inc. v. Int'l Broth. of Teamsters*, 728 F.3d 853, 861 (8th Cir. 2013) (quoting *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012)) (first, second, third and fourth alterations in original). A court may reach an affirmative defense in a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss "if all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (alteration in original) (emphasis removed); *see also Ruiz-Sanchez v. Goodyear Tire & Rubber Co.*, 717 F.3d 249, 252 (1st Cir. 2013) ("Dismissal 'on the basis of an affirmative defense requires that (i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude.'" (quoting *Nisselson v. Lernout*, 469 F.3d 143, 150 (1st Cir. 2006))).

### c. Analysis

Defendants rely on a Missouri Court of Appeals case for the proposition that when a "notice contained clear information on how to dispute the citation the court held that payment waived the claim." Brief in Support of the Motion at 22 (citing *Edwards v. City of Ellisville*, 426 S.W.3d 644 (Mo. Ct. App. 2013)). However, in *Edwards*, the Missouri Court of Appeals' conclusion rests on the fact that "in Missouri . . . a constitutional question must be presented at the earliest possible moment 'that good pleading and orderly

procedure will admit under the circumstances of the given case, otherwise it will be waived.'" *Edwards*, 426 S.W.3d at 654 (quoting *Callier v. Dir. of Revenue*, 780 S.W.2d 639, 641 (Mo. banc 1989)). Defendants have not pointed to any case requiring a litigant to present a constitutional question at the earliest possible moment in federal court. Moreover, in *Edwards*, a person who received a citation was informed that he or she could either pay the fine or proceed to a hearing in municipal court. *See id.* at 654-55. Here, by contrast, a person who receives a Notice of Violation may either pay the fine or appear at an administrative hearing. At the administrative hearing—at which a police officer is allegedly the decision maker—the hearing officer is alleged to have "refused to consider the arguments of Plaintiffs." Second Amended Complaint ¶ 4.b. Thus, even were Plaintiffs required to present constitutional arguments at the earliest possible moment, the administrative hearing provided by the ATE system does not provide a sufficient forum for a plaintiff to bring his or her constitutional claims and, therefore, the court is unable to find at this stage that Plaintiffs have waived their claims.

In addition, the court finds that Plaintiffs' alleged waiver of their claims is not "apparent on the face of the complaint." *ABF Freight*, 728 F.3d at 861. The court concludes that the facts alleged in the Second Amended Complaint do not "suffice to establish the affirmative defense with certitude." *Nisselson*, 469 F.3d at 150. Accordingly, the court shall deny the Motion to Dismiss to the extent it seeks to dismiss Plaintiffs' claims based on waiver.

### 2. *Substantive due process*

#### a. *Parties' arguments*

Defendants argue that Plaintiffs fail to state a claim for a violation of substantive due process because "[t]he enforcement of a valid traffic law . . . does not violate a motorist's right to travel." Brief in Support of the Motion at 24. Defendants also contend

that "Plaintiffs have failed to allege facts to support a claim that the ATE system is not rationally related to a legitimate purpose." *Id.*

Plaintiffs argue that they "have alleged that the constitutionally-protected rights to travel and to property have been violated by the Ordinance." Resistance at 39. Plaintiffs also contend that they have adequately pled a violation of their substantive due process rights because the "Ordinance and its enforcement by the City and Gatso . . . should 'offend judicial notions of fairness and human dignity.'" *Id.* (quoting *Young v. City of St. Charles*, 244 F.3d 623, 628 (8th Cir. 2001)).

### b.    Applicable law[6]

A plaintiff may show a violation of substantive due process in two ways: (1) by showing that the challenged conduct "infringes 'fundamental' liberty interests, without narrowly tailoring that interference to serve a compelling state interest" or (2) by showing that the challenged conduct "is so outrageous that it shocks the conscience or otherwise

---

[6] Article I, § 9 of the Iowa Constitution provides that "no person shall be deprived of life, liberty, or property, without due process of law." Iowa Const. art. I, § 9. This provision "mirrors the provisions of [the Fifth and Fourteenth Amendment to the] United States Constitution. Accordingly, [the Iowa Supreme Court] interpret[s] both the Iowa and federal Due Process Clauses in the same fashion, including approaching due process questions under a rubric differentiating between 'procedural' and 'substantive' due process." *Master Builders of Iowa, Inc. v. Polk Cnty.*, 653 N.W.2d 382, 397 (Iowa 2002). Plaintiffs argue that "the Iowa Supreme Court, if presented with the question, would interpret the substantive due process clause of Iowa's Constitution[] differently than that of the federal Constitution." Resistance at 41. However, Plaintiffs provide no reason for this assertion, and the court finds it unpersuasive. This court is required to apply Iowa law as it exists. If a federal district court had to abstain from deciding issues of state law for the sole reason that a state court has the power to change the law, a litigant could effectively preclude a federal district court from ever applying state law by merely asserting that the state courts may reverse course. Such a result is inconsistent with federal courts' supplemental jurisdiction over state-law questions. Accordingly, the court's due process analysis, while using federal law, applies equally to Plaintiffs' claims under the Iowa Constitution.

offends 'judicial notions of fairness, [or is] offensive to human dignity.'" *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998) (quoting *Weimer v. Amen*, 870 F.2d 1400, 1405 (8th Cir. 1989)) (alteration in original).

To show that a fundamental right has been infringed, the court looks to "[t]he directness and substantiality of the interference" with the fundamental right at issue. *Zablocki v. Redhail*, 434 U.S. 374, 387 n.12 (1978). When a fundamental right is at issue, the Due Process Clause requires an infringement of such fundamental right to be "narrowly tailored to serve a compelling state interest." *Brown v. Nix*, 33 F.3d 951, 953 (8th Cir. 1994) (citing *Flores*, 507 U.S. at 301-02). When a fundamental right is not at issue, courts apply a rational basis test, asking whether there is "a 'reasonable fit' between [the] governmental purpose . . . and the means chosen to advance that purpose." *Reno v. Flores*, 507 U.S. 292, 305 (1993); *see also Gallagher v. City of Clayton*, 699 F.3d 1013, 1019 (8th Cir. 2012) ("Where a law neither implicates a fundamental right nor involves a suspect or quasi-suspect classification, the law must only be rationally related to a legitimate government interest.").

The right to travel is a fundamental right recognized by the Supreme Court. The Court stated that "[t]he constitutional right to travel from one State to another, and necessarily to use the highways and other instrumentalities of interstate commerce in doing so, occupies a position fundamental to the concept of our Federal Union. It is a right that has been firmly established and repeatedly recognized." *United States v. Guest*, 383 U.S. 745, 757 (1966). The right to travel:

> embraces at least three different components. It protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State.

*Saenz v. Roe*, 526 U.S. 489, 500 (1999). When a statute "impose[s] no obstacle to [an out of state resident's] entry into [a state] . . . the statute does not directly impair the exercise of the right to free interstate movement." *Id.* at 501. "The second component of the right to travel is . . . expressly protected by the text of the Constitution" in the Privileges and Immunities Clause. *Id.* This second component "provides important protections for nonresidents who enter a State." *Id.* at 502. This component prevents "discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States." *Id.* (quoting *Toomer v. Witsell*, 334 U.S. 385, 396 (1948)). Finally, the third component is "the right of the newly arrived citizen to the same privileges and immunities enjoyed by other citizens of the same State." *Id.*

To shock the conscience, the alleged violation must be "so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power literally shocking to the conscience." *Christiansen v. West Branch Cmty. Sch. Dist.*, 674 F.3d 927, 937 (8th Cir. 2012) (quoting *C.N. v. Willmar Pub. Schs., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 634 (8th Cir. 2010)) (alterations in original). A plaintiff "must allege that a government action was sufficiently outrageous or truly irrational, that is, something more than . . . arbitrary, capricious, or in violation of state law" to state a substantive due process claim. *Id.* (quoting *Young*, 244 F.3d at 628) (internal quotation marks omitted).

### c.    *Analysis*

Plaintiffs fail to state a claim for a violation of substantive due process because they have not shown either that their fundamental right to travel has been infringed or that Defendants' conduct shocks the conscience.

Turning first to the issue of whether Defendants have infringed Plaintiffs' fundamental rights, Defendants' conduct has not imposed an obstacle to out-of-state residents' entry into Iowa and therefore the ATE system "does not directly impair the exercise of the right to free interstate movement."[7] *Saenz*, 526 U.S. at 500; *see also Matsuo v. United States*, 586 F.3d 1180, 1183 (9th Cir. 2009) ("[N]ot everything that deters travel burdens the fundamental right to travel. States and the federal government would otherwise find it quite hard to tax airports, hotels, moving companies or anything else involved in interstate movement."). The Supreme Court characterizes this right as "the right to go from one place to another, including the right to cross state borders while en route." *Saenz*, 526 U.S. at 500. For example, the Court held unconstitutional a state law making it illegal for a person to bring out-of-state, indigent persons into the State. *See Edwards v. California*, 314 U.S. 160 (1941). The Court also made clear "the right to travel freely to and from [a State] and to use highway facilities and other instrumentalities of interstate commerce within [a State]." *Guest*, 383 U.S. at 757 (internal quotation marks omitted). Here, by contrast, the ATE scheme does not prevent out-of-state residents from entering into Iowa. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 277 (1993) ("[A] purely intrastate restriction does not implicate the right of interstate travel, even if it is applied intentionally against travelers from other States, unless it is applied *discriminatorily* against them.").

Because Plaintiffs have not adequately alleged that Defendants have violated a fundamental right, the court applies a rational basis test. Under rational basis, the court

---

[7] To the extent Plaintiffs argue that the ATE system implicates the second component of the right to travel—to be treated as a welcome visitor—the court shall address such argument in the Privileges and Immunities Clause section below. *See Saenz*, 526 U.S. at 501 ("The second component of the right to travel is, however, expressly protected by the text of the Constitution . . . [in] [t]he first sentence of Article IV, § 2 . . . .").

has no trouble concluding that the ATE system is "rationally related to a legitimate government interest." *Gallagher*, 699 F.3d at 1019; *see also Idris v. City of Chicago*, 552 F.3d 564, 566 (7th Cir. 2009) ("A system that simultaneously raises money and improves compliance with traffic laws has much to recommend it and cannot be called unconstitutionally whimsical."). The City could rationally conclude that the ATE system would reduce the number of people violating traffic laws while simultaneously raising money.

The court also finds that Defendants' alleged conduct does not remotely approach the level of shocking the conscience. Plaintiffs argue that:

> It 'shocks the conscience' . . . that the State can set a minimum requirement for due process on its highways, and the City can flaunt such requirements by issuing citations from cameras and radar equipment that are located in direct violation of said minimum requirements . . . . It shocks the conscience, further that citizens should be forced to consider whether paying a demanded fine when threatened with the loss of their driving privileges for failing to do so—when Iowa law express[ly] prohibits the suspension of driving privileges in such circumstances.

Resistance at 40. These allegations are not "so severe . . . [,] so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power literally shocking to the conscience." *Christiansen*, 674 F.3d at 937 (quoting *Willmar Pub. Schs.*, 591 F.3d at 634). Indeed, "[t]he Constitution does not demand that units of state government follow state law." *Idris*, 552 F.3d at 567. Accordingly, the court shall grant the Motion to Dismiss to the extent it argues that Plaintiffs fail to state a claim for a violation of substantive due process.

### 3. Equal protection

#### a. Parties' arguments

Defendants argue that "Plaintiffs have not alleged membership in a suspect class" and, therefore, "the ATE system is only subject to rational basis review." Brief in Support of the Motion at 24-25. Defendants argue that the ATE system passes rational basis review.

Plaintiffs admit that they "are not members of suspect classes." Resistance at 43. However, they argue that they have a fundamental right to travel and such right "is impacted by an invalid traffic law, for a multitude of reasons." *Id.*

#### b. Applicable law[8]

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "[E]qual protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a

---

[8] Iowa courts "apply the same analysis in considering . . . state equal protection claim[s] as [they] do in considering . . . federal equal protection claim[s]." *In re Morrow*, 616 N.W.2d 544, 548 (Iowa 2000). However, Plaintiffs argue that "[w]hile not currently necessary to analyze, . . . the Iowa Supreme Court does not always apply the same scope of review based on the Iowa Constitution's Equal Protection clause." Resistance at 42 n.29; *see also Racing Ass'n of Cent. Iowa v. Fitzgerald*, 675 N.W.2d 1, 5 (Iowa 2004) ("While the [United States] Supreme Court's judgment on the constitutionality of Iowa's [statute] under the federal Equal Protection Clause is persuasive, it is not binding on this court as we evaluate this law under the Iowa Constitution."). Because Plaintiffs concede that for purposes of the Motion to Dismiss the state equal protection analysis is identical to the federal equal protection analysis, the court's federal equal protection analysis applies equally to Plaintiffs' state equal protection claims.

suspect class." *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 312 (1976). When no fundamental right or suspect class is at issue, a challenged law must be "rationally related to a legitimate state interest." *Pennell v. City of San Jose*, 485 U.S. 1, 14 (1988) (quoting *New Orleans v. Dukes*, 427 U.S. 297, 303 (1976)) (internal quotation marks omitted). A court will uphold a statute on rational basis review "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [a court] can only conclude that the legislature's actions were irrational." *Id.* (quoting *Vance v. Bradley*, 440 U.S. 93, 99 (1979)) (internal quotation marks omitted).

### c.    *Analysis*

Plaintiffs' equal protection argument fails for the same reasons their substantive due process arguments fail—Plaintiffs fail to state a claim for a violation of their fundamental right to travel. The Supreme Court has not explicitly identified in what part of the Constitution the fundamental right to travel is found, at least with regard to the first component of the right to travel. *See Saenz*, 526 U.S. at 501 ("For the purposes of this case, therefore, we need not identify the source of that particular right in the text of the Constitution. The right of 'free ingress and regress to and from' neighboring States, which was expressly mentioned in the text of the Articles of Confederation, may simply have been 'conceived from the beginning to be a necessary concomitant of the stronger Union the Constitution created.'" (quoting *Guest*, 383 U.S. at 758) (footnote omitted)). However, whether found in the Due Process Clause or in the Equal Protection Clause, Defendants' conduct has not imposed an obstacle to out-of-state residents' entry into Iowa and, therefore, the ATE system "does not directly impair the exercise of the right to free interstate movement." *Saenz*, 526 U.S. at 500; *see also Matsuo*, 586 F.3d at 1183 ("[N]ot everything that deters travel burdens the fundamental right to travel. States and the federal

government would otherwise find it quite hard to tax airports, hotels, moving companies or anything else involved in interstate movement.").

Plaintiffs appear to contend in their Second Amended Complaint that the ATE system creates arbitrary classes of citizens based on (1) whether vehicles have rear license plates and (2) whether certain vehicles are contained in a database that Defendants use to identify individuals according to license plate information. *See* Second Amended Complaint ¶ 35. The court concludes that such a classification is rationally related to a legitimate government interest. The City certainly has a legitimate interest in ensuring its traffic laws are enforced, and the ATE system helps the City to enforce such laws. That the ATE enforcement may be underinclusive because of the limitations of the camera system and the license plate databases does not matter. "It is no requirement of equal protection that all evils of the same genus be eradicated or none at all." *Railway Exp. Agency v. New York*, 336 U.S. 106, 110 (1949); *see also Vance*, 440 U.S. at 108 ("Even if the classification involved . . . is to some extent both underinclusive and overinclusive, and hence the line drawn by [the legislature] imperfect, it is nevertheless the rule that in a case like this 'perfection is by no means required.'" (quoting *Phillips Chem. Co. v. Dumas Sch. Dist.*, 361 U.S. 376, 385 (1960))). It is irrelevant that other ATE systems exist that allow for photographs of both front and rear license plates. *See* Second Amended Complaint ¶ 33 ("Although such camera technology used in ATE systems in other communities . . . allow ATE cameras to take photographs of *front* or *front-and-back* license plates . . . , the technologies provided by [Defendants] for use in the . . . ATE program . . . allow only the photographs of *rear* license plates . . . ."). For example, the City could rationally conclude that a system that only photographs rear license plates is less expensive and that it is more cost-effective to capture fewer people who violate the Ordinance with a less expensive system. Likewise, it is irrelevant that Defendants cannot identify every vehicle for which the ATE system photographs. *See id.* ¶ 35(d)

("[Defendants] rely heavily upon a license plate database purchased from the State of Iowa Department of Transportation . . . . Plaintiffs are concerned that the owners of some vehicles bearing out-of-state license plates are not allowed, *de facto*, to escape the imposition of civil penalties described in the ATE ordinance."). Defendants could rationally conclude that purchasing the license plate databases it does is the most cost-effective way to enforce the Ordinance. *See Gilmore v. Cnty. of Douglas*, 406 F.3d 935, 937 (8th Cir. 2005) ("[W]hile we view facts alleged in the complaint as true, we recognize that 'a legislative choice . . . may be based on rational speculation unsupported by evidence or empirical data.' We have thus explained that because 'all that must be shown is any reasonably conceivable state of facts that could provide a rational basis for the classification, it is not necessary to wait for further factual development' in order to conduct a rational basis review on a motion to dismiss." (quoting *Carter v. Arkansas*, 392 F.3d 965, 968 (8th Cir. 2004))). Accordingly, the court shall grant the Motion to Dismiss to the extent it seeks to dismiss Plaintiffs' equal protection claims.

### 4. *Privileges and immunities*

#### a. *Parties' arguments*

Defendants argue that "there is no fundamental right at stake here" because "[t]he enforcement of a valid traffic law . . . does not violate a motorist's right of travel." Brief in Support of the Motion at 30. Defendants additionally argue that "the ATE ordinance simply does not distinguish between out-of-state residents and Iowans." *Id.*

Plaintiffs argue that "Plaintiffs are treated differently depending on where they reside." Resistance at 44. This is so, Plaintiffs argue, because "[i]f one lives an hour from Cedar Rapids one way, one does not need to appear to contest an administrative hearing. Contrastingly, if one lives an hour the other way, one does have to appear. Out-of-state residents also receive even more confusing information than in-state residents." *Id.* Plaintiffs argue that their fundamental right to travel is at stake and is one of the

privileges and immunities contemplated by the Privileges and Immunities Clause. *Id.*

### b.      *Applicable law*[9]

The Privileges and Immunities Clause is contained in Article IV, § 2 of the United States Constitution and states: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. Art. IV.

> When the Privileges and Immunities Clause has been applied to specific cases, it has been interpreted to prevent a State from imposing unreasonable burdens on citizens of other States in their pursuit of common callings within the State; in the ownership and disposition of privately held property within the State; and in access to the courts of the State.

*Baldwin v. Fish & Game Comm'n of Mont.*, 436 U.S. 371, 383 (1978) (internal citations omitted). "Only with respect to those 'privileges' and 'immunities' bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally." *Id.* "[T]he right to travel is . . . expressly protected by the text of the Constitution." *Saenz*, 526 U.S. at 501. "Thus, by virtue of a person's citizenship, a citizen of one State who travels in other States, intending to return home at the end of his journey, is entitled to enjoy the 'Privileges and Immunities of Citizens in the several States' that he visits." *Id.* The Privileges and Immunities Clause "provides important protections for nonresidents who enter a State whether to obtain employment, to procure

---

[9] Plaintiffs concede that "[t]he Iowa Supreme Court applies . . . traditional equal protection analysis to its Privileges and Immunities Clause." Resistance at 44 (citing *Perkins v. Bd. of Supervisors*, 636 N.W.2d 58, 72-73 (Iowa 2001)). Plaintiffs contend that "the history and depth of the Iowa Constitution's pre-Civil War privileges and immunities clause adds dimensions of protections to citizens that are not completely addressed by the similar clause found in the United States Constitution." *Id.* Plaintiffs cite no authority for this proposition, and the court is aware of none. Accordingly, to the extent Plaintiffs claim that Defendants violate Iowa's Privileges and Immunities Clause, the court construes this argument as an equal protection argument. *See Perkins*, 636 N.W.2d at 73 ("[The Iowa Supreme Court] test[s] a challenge under the Privileges and Immunities Clause by the traditional equal protection analysis.").

medical services, or even to engage in commercial shrimp fishing." *Id.* at 502 (internal citations omitted). The Supreme Court has upheld states "requiring the nonresident to pay more than the resident for a hunting license, or to enroll in the state university." *Id.* (citing *Baldwin*, 436 U.S. at 390-91 (1978) and *Vlandis v. Kline*, 412 U.S. 441, 445 (1973)).

"Application of the Privileges and Immunities Clause to a particular instance of discrimination against out-of-state residents entails a two-step inquiry. As an initial matter, the court must decide whether the ordinance burdens one of those privileges and immunities protected by the Clause." *United Bldg. & Const. Trades Council of Camden Cnty. & Vicinity v. Mayor and Council of City of Camden*, 465 U.S. 208, 218 (1984). If the ordinance burdens a privilege or immunity protected by the Privileges and Immunities Clause, there must be a "substantial reason for the discrimination beyond the mere fact that they are citizens of other States." *Toomer v. Witsell*, 334 U.S. 385, 396 (1948). Specifically, "[t]he Clause does not preclude discrimination against nonresidents where (i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective." *Supreme Court of N.H. v. Piper*, 470 U.S. 274, 284 (1985). "In deciding whether the discrimination bears a close or substantial relationship to the State's objective, the Court has considered the availability of less restrictive means." *Id.*

### c. Analysis

The court finds that Plaintiffs fail to state a claim for a violation of the Privileges and Immunities Clause. Plaintiffs assert that the "fundamental right to travel . . . bears on 'the vitality of the Nation as a single entity.'" Resistance at 44 (quoting *Baldwin*, 436 U.S. at 383). One fundamental right protected by the Privileges and Immunities Clause "include[s] 'the right of a citizen of one state to pass through, or to reside in any other state.'" *Saenz*, 526 U.S. at 501 n.14 (quoting *Corfield v. Coryell*, 6 F. Cas. 546 (No.

3,230) (C.C.E.D.Pa. 1823)). However, Plaintiffs have not alleged that the ATE system affects the rights of non-Iowa citizens to pass through or reside in Iowa. That is, the ATE system does not "burden[] one of those privileges and immunities protected by the Clause." *United Bldg.*, 465 U.S. at 218. Indeed, as a part of the Second Amended Complaint, Plaintiffs allege that "[m]any 100,000s [of] out-of-state-based vehicles . . . that conduct business across state lines don't have rear license plates . . . [and] are, *de facto*, exempted from prosecution under the ATE Ordinance." Second Amended Complaint ¶ 35(b). Not only that, Plaintiffs do not allege that Defendants enforce the Ordinance disproportionately against out-of-state drivers. *See generally id.* Plaintiffs allege that the ATE system actually favors out-of-state residents as compared to Iowa residents. A system that favors out-of-state residents simply does not implicate the Privileges and Immunities Clause because it does not discourage out-of-state residents from entering into or remaining in Iowa. Whether analyzed under the Due Process Clause, the Equal Protection Clause or the Privileges and Immunities Clause, Plaintiffs fail to state a claim for a violation of their fundamental right to travel. *See Saenz*, 526 U.S. at 501 (stating that "we need not identify the source of [the right of a citizen of one state to enter and leave another state] in the text of the Constitution" and that "[t]he right of 'free ingress and regress to and from' neighboring States, which was expressly mentioned in the text of the Articles of Confederation, may simply have been 'conceived from the beginning to be a necessary concomitant of the stronger Union the Constitution created'" (quoting *Guest*, 383 U.S. at 758)). Accordingly, the court shall grant the Motion to Dismiss to the extent it argues that Plaintiffs fail to state a claim for a violation of the Privileges and Immunities Clause.

### 5.   *Department of Transportation rules*

#### a.   *Parties' arguments*

Defendants argue that any violations of Iowa Department of Transportation ("IDOT") rules "do not give rise to a constitutional claim, or any claim, against the defendants." Brief in Support of the Motion at 31. Defendants contend that, apart from constitutional claims, "a violation of the DOT rule[s] does not give Plaintiffs authority to enforce those rules." *Id.* at 33.

Plaintiffs concede that they "are not alleging a private cause of action based on the Iowa Administrative Code . . . , but rather, note [the IDOT rules] as a standard applicable to their claims, among other deficiencies in procedural due process." Resistance at 46. That is, Plaintiffs appear to argue that because Defendants are not in compliance with IDOT rules, they violate Plaintiffs' procedural due process rights.

#### b.   *Applicable law*

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).   "Generally, 'due process requires that a hearing before an impartial decisionmaker be provided at a meaningful time, and in a meaningful manner.'" *Booker v. City of St. Paul*, 762 F.3d 730, 734 (8th Cir. 2014) (quoting *Coleman v. Watt*, 40 F.3d 255, 260 (8th Cir. 1994)).

> To determine what kind of process is due, courts balance three factors: "(1) the nature and weight of the private interest affected by the challenged official action; (2) the risk of an erroneous deprivation of such interest as a result of the summary procedures used; and (3) the governmental function involved and state interests served by such procedures, as well as the administrative and fiscal burdens, if any, that would result from the substitute procedures sought."

*Id.* (quoting *Coleman*, 40 F.3d at 260). In applying its state constitution, Iowa applies the same three *Eldridge* factors. *See Jones v. Univ. of Iowa*, 836 N.W.2d 127, 145-46 (Iowa 2013) (applying *Eldridge* factors when analyzing a procedural due process claim under the Iowa Constitution).

### c.    Analysis

Defendants have not explicitly moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' procedural due process claims for failing to state a claim on which relief may be granted.[10] In the interest of efficiency, the court shall decide whether Plaintiffs have adequately pleaded a claim for a violation of their right to procedural due process.[11] *See Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014) (stating that a district court "may . . . *sua sponte* dismiss a claim pursuant to [Federal Rule of Civil Procedure] 12(b)(6)").

To the extent that Plaintiffs argue that the IDOT regulations "provide the baseline of notice," Resistance at 45, required for due process, the court disagrees. Whether the

---

[10] Defendants moved to dismiss all claims made by Plaintiffs. *See* Brief in Support of the Motion at 36. However, Defendants moved to dismiss Plaintiffs' procedural due process claims only on the issues of standing and waiver. In light of the court's finding that Krisanne M. Duhaime, Gerald Reid Duhaime, Susan M. Dumbaugh and Roger L. Lee may all bring claims for a violation of their procedural due process rights, the court shall analyze whether such Plaintiffs have stated a claim for relief in the Second Amended Complaint.

[11] Article I, § 9 of the Iowa Constitution provides that "no person shall be deprived of life, liberty, or property, without due process of law." Iowa Const. Art. I, § 9. This provision "mirrors the provisions of [the Fifth and Fourteenth Amendment to the] United States Constitution. Accordingly, [the Iowa Supreme Court] interpret[s] both the Iowa and federal Due Process Clauses in the same fashion, including approaching due process questions under a rubric differentiating between 'procedural' and 'substantive' due process." *Master Builders of Iowa, Inc. v. Polk Cnty.*, 653 N.W.2d 382, 397 (Iowa 2002). Accordingly, the court's Due Process analysis, while using federal law, applies equally to Plaintiffs' claims under the Iowa Constitution.

process provided is compliant with IDOT regulations is not relevant to the procedural due process question. That is, the ATE system may comply with procedural due process even if it is not compliant with IDOT regulations. Conversely, if the ATE system complies with IDOT regulations, the ATE system may still not provide citation recipients with procedural due process. Plaintiffs provide no authority for the proposition that noncompliance with state regulations implicates the Due Process Clause, and the court is aware of none.

Turning first to "the nature and weight of the private interest affected by the challenged official action," *Booker*, 762 F.3d at 734, persons who receive a Notice of Violation are subject to a civil fine between $25 (traveling one to five miles per hour above the speed limit) and $750 (traveling over thirty miles per hour above the speed limit in a construction zone). *See* Cedar Rapids, Iowa Code of Ordinances § 61.138(d); *see also* Notices of Violation and Notices of Determination (docket no. 19-2) at 4-51 (listing the fines levied against all named Plaintiffs). A person who violates the Ordinance does not risk losing his or her driver's license. *See generally* City of Cedar Rapids, Iowa Code of Ordinances § 61.138. A civil fine between $25 and $750, although certainly a property interest protected by the Due Process Clause, is not a particularly weighty property interest. *See, e.g.*, *Goldberg v. Kelly*, 397 U.S. 254 (1970) (applying procedural due process analysis to termination of a person's welfare benefits); *Arnett v. Kennedy*, 416 U.S. 134 (1974) (applying procedural due process analysis to termination of a public employee following alleged misconduct); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) (same); *Little v. Streater*, 542 U.S. 1 (1981) (applying procedural due process analysis to government payment to indigent defendants in paternity cases); *Morrissey v. Brewer*, 408 U.S. 471 (1972) (applying procedural due process analysis to persons alleged to have violated the terms of their probation or parole).

Turning next to "the risk of an erroneous deprivation of [the amount of the fine] as a result of the summary procedures used," *Booker*, 40 F.3d at 260, the court finds that

40

there is little risk of an erroneous deprivation of Plaintiffs' property rights. As discussed above, the ATE system as implemented by Defendants provides that a person charged with an automated traffic citation may challenge such citation in two ways:

> 1. By submitting in a form specified by the City a request for an administrative hearing to be held at the Cedar Rapids Police Department before an administrative appeals board (the "Board") consisting of one or more impartial fact finders. Such a request must be filed within 30 days from the date on which Notice of the violation is sent to the Vehicle Owner. After a hearing, the Board may either uphold or dismiss the Automated Traffic Citation, and shall mail its written decision within 10 days after the hearing, to the address provided on the request for hearing. If the citation is upheld, then the Board shall include in its written decision a date by which the fine must be paid, and on or before that date, the Vehicle Owner shall either pay the fine or submit a request pursuant to the next paragraph, (e.)(2.).
>
> 2. By submitting in a form specified by the City a request that in lieu of the Automated Traffic Citation, a municipal infraction citation be issued and filed with the Small Claims Division of the Iowa District Court in Linn County. Such a request must be filed within 30 days from the date on which Notice of the violation is sent to the Vehicle Owner. Such a request will result in a court order requiring the Vehicle Owner to file an answer and appearance with the Clerk of Court, as well as setting the matter for trial before a judge or magistrate. If the Court finds the Vehicle Owner guilty of the municipal infraction, state mandated court costs will be added to the amount of the fine imposed by this section.

Cedar Rapids, Iowa Code of Ordinances § 61.138(e). Thus, if a person receives a Notice of Violation and he or she does not believe any ordinance was violated, such person may participate in an administrative hearing at the Cedar Rapids Police Department or proceed to the Small Claims Division of the Iowa District Court in Linn County, Iowa. Even if a person decides to proceed with the administrative hearing, if the person is unhappy with

the result, he or she may still proceed to the Small Claims Division of the Iowa District Court for Linn County. Indeed, if such an individual remains dissatisfied with the decision of the small claims court, he or she may take the case all the way through the Iowa Supreme Court. Such process provides for "a hearing before an impartial decisionmaker . . . at a meaningful time, and in a meaningful manner." *Booker*, 762 F.3d at 734 (quoting *Coleman*, 40 F.3d at 260) (internal quotation marks omitted). Moreover, none of the named plaintiffs assert that they received a Notice of Violation without having actually violated the Ordinance—that is, no plaintiff alleges either that (1) the speed cameras incorrectly identified a vehicle as traveling in excess of the speed limit, or (2) erroneously captured a plaintiff crossing a marked stop line or intersection plane at a system location when the traffic signal for that vehicle's direction emitted a steady red light or arrow. While procedures may of course violate procedural due process despite actually erroneously depriving a person of property, the fact that all plaintiffs appear to concede that they actually violated the ordinance suggests that the risk of an erroneous deprivation of a property interest is low.

Finally, Plaintiffs do not appear to propose any substitute procedure that differs from what Defendants provide. Indeed, one who receives a Notice of Violation may contest the violation all the way through the Iowa Supreme Court. Accordingly, the court shall grant the Motion to Dismiss to the extent it argues that Plaintiffs fail to state a claim for relief for a violation of procedural due process.

### 6.    *Unjust enrichment*

Defendants argue that Plaintiffs fail to state a claim for unjust enrichment because several Plaintiffs voluntarily paid the citation and because Plaintiffs fail to show a violation of some underlying right. *See* Brief in Support of the Motion at 32-34.

Plaintiffs argue that "it is unjust to allow Defendants . . . the retention of civil penalty proceeds" "[b]ased on the unconstitutionality of the Ordinance." Resistance at 47.

"Unjust enrichment is an equitable doctrine of restitution, wherein a plaintiff 'must prove the defendant received a benefit that in equity belongs to the plaintiff.'" *Iowa Network Servs., Inc. v. Qwest Corp.*, 363 F.3d 683, 694 (8th Cir. 2004) (quoting *Slade v. M.L.E. Inv. Co.*, 566 N.W.2d 503, 506 (Iowa 1997)). To show that a defendant has been unjustly enriched, a plaintiff must show: "(1) [the] defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances." *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 154-55 (Iowa 2001).

Here, the court has already found that Plaintiffs fail to state any claim upon which relief may be granted—the Ordinance is not unconstitutional. While Defendants may have been enriched at the expense of some Plaintiffs, such enrichment was not unjust because the Ordinance is constitutional. Accordingly, the court shall grant the Motion to Dismiss to the extent it argues that Plaintiffs fail to state a claim for unjust enrichment.

### E. Plaintiffs' Remaining Claims

Plaintiffs seek declaratory relief from the court because:

> The digital camera traffic law enforcement scheme described herein, on its face, violates the Iowa Constitution setting up the Judicial Department (Article V, sections 5 and 8), as well as Iowa Code section 602.6101, by providing a different process for prosecutions, and taking jurisdiction for traffic enforcement matters away from the Iowa District Court, the Unified Trial Court, which has "exclusive, general, and original jurisdiction of all actions," including civil and criminal matters such as traffic enforcement.

Second Amended Complaint ¶ 101.

Plaintiffs fail to state a claim for relief under Article V, section 5 of the Iowa Constitution because Article V, section 5 was repealed in 1962.

Plaintiffs fail to state a claim for relief under Article V, section 8 of the Iowa Constitution, which provides: "The style of all process shall be, 'The State of Iowa', and

43

all prosecutions shall be conducted in the name and by the authority of the same." Iowa Const. art. V, § 8. Section 8 does not "requir[e] the State to be a party to every petty prosecution under the police regulations of a municipal[ity]." *City of Davenport v. Bird*, 34 Iowa 524, 528 (Iowa 1872). That is, Section 8 "was not intended to include prosecutions under ordinances of municipal[ities]." *Id.* Accordingly, the Ordinance does not violate Article V, section 8 of the Iowa Constitution.

Finally, Plaintiffs fail to state a claim for relief under Iowa Code § 602.6101, which provides:

> A unified trial court is established. This court is the "Iowa District Court". The district court has exclusive, general, and original jurisdiction of all actions, proceedings, and remedies, civil, criminal, probate, and juvenile, except in cases where exclusive or concurrent jurisdiction is conferred upon some other court, tribunal, or administrative body. The district court has all the power usually possessed and exercised by trial courts of general jurisdiction, and is a court of record.

Iowa Code § 602.6101. Article III, section 38A of the Iowa Constitution provides that:

> Municipal corporations are granted home rule power and authority, not inconsistent with the laws of the general assembly, to determine their local affairs and government, except that they shall not have power to levy any tax unless expressly authorized by the general assembly.

Iowa Const. art. III, § 38A. "Under [Iowa's] home-rule approach, except for taxing authority, municipalities ordinarily have the power to determine local affairs as they see fit unless the legislature has provided otherwise." *Madden v. City of Iowa City*, 848 N.W.2d 40, 49 (Iowa 2014). The Iowa legislature explicitly provides that "[a] city by ordinance may provide that a violation of an ordinance is a municipal infraction" and that "[a]n officer authorized by a city to enforce a city code or regulation may issue a civil citation to a person who commits a municipal infraction." Iowa Code § 364.22. In addition, such a civil citation "shall be tried before a magistrate, a district associate judge,

or a district judge in the same manner as a small claim." *Id.* Contrary to Plaintiffs' assertion, the ATE system does not "tak[e] jurisdiction for traffic enforcement matters away from the Iowa District Court." Second Amended Complaint ¶ 101. Rather, the ATE system allows a person who receives a Notice of Violation an opportunity to first object to the alleged violation at a City-sanctioned administrative hearing before proceeding to the Iowa district courts. Such a system amounts to, at most, concurrent jurisdiction over alleged municipal violations. *See Iowa v. Stueve*, 150 N.W.2d 597, 602 (Iowa 1967) ("'Concurrent jurisdiction' . . . means that jurisdiction exercised by different courts, at the same time, over the same subject-matter, and within the same territory, and wherein litigants may, in the first instance, resort to either court indifferently."). Accordingly, the court shall dismiss Plaintiffs' claims under Article V, sections 5 and 8 of the Iowa Constitution and under Iowa Code section 602.6101.

## VII. CONCLUSION

In light of the foregoing, Defendants City of Cedar Rapids, Iowa and Gatso USA, Inc.'s "Motion to Dismiss Second Amended Complaint" (docket no. 19) is **GRANTED**. The Second Amended Complaint is **DISMISSED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants.

**IT IS SO ORDERED.**

**DATED** this 2nd day of July, 2015.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA